EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| El Pueblo de Puerto Rico<br><br>Recurrido<br><br>v.<br><br>Kelvin Rivera Ortiz<br><br>Peticionario | 2022 TSPR 62<br><br>209 DPR \_\_\_\_ |

Número del Caso: AC-2019-140


Fecha: 13 de mayo de 2022


Tribunal de Apelaciones:

    Panel III


Abogado de la parte recurrente:

    Lcdo. Ramón A. Nevárez Ortiz


Oficina del Procurador General:

    Lcdo. Isaías Sánchez Báez
    Procurador General

    Lcda. Liza M. Delgado González
    Procuradora General Auxiliar


Materia: Procedimiento Criminal – Una moción de reconsideración sobre la condena por uno de los delitos imputados interrumpe el término jurisdiccional para apelar el resto de los delitos por los cuales se dictó sentencia en el mismo procedimiento judicial.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

    Recurrido

       v.                      AC-2019-0140

Kelvin Rivera Ortiz

    Peticionario


La Jueza Presidenta Oronoz Rodríguez emitió la Opinión del Tribunal


En San Juan, Puerto Rico, a 13 de mayo de 2022.

Debemos evaluar si el Tribunal de Apelaciones actuó correctamente al desestimar una apelación por falta de jurisdicción. En particular, si la presentación oportuna de una moción de reconsideración ante el Tribunal de Primera Instancia, en la que se solicita la revisión de su convicción por uno de los delitos imputados, paraliza el término jurisdiccional para apelar el resto de los delitos por los cuales se dictó sentencia, en el mismo procedimiento judicial.

Contestamos en la afirmativa y por las razones siguientes determinamos que el Tribunal de Apelaciones erró al desestimar, por falta de jurisdicción, la segunda apelación que presentó el Sr. Kelvin Rivera Ortiz (señor Rivera Ortiz o peticionario). Resolvemos también

que, una vez se presenta una moción de reconsideración en cuanto a uno de los cargos al amparo de la Regla 194 de Procedimiento Criminal, infra, se interrumpe por igual el término para apelar el resto de las sentencias por delitos acumulados en el mismo procedimiento judicial. Ello, es independiente a que se hayan incluido en la moción de reconsideración ante el foro primario.

## I

Por hechos que ocurrieron el 20 de octubre de 2017, el Ministerio Público presentó tres acusaciones contra el señor Rivera Ortiz por violaciones al Art. 93 del Código Penal de 2012, 33 LPRA sec. 5142 (asesinato en primer grado), caso número DVI2018G0037, y los Arts. 5.04 y 5.15(d) de la Ley de Armas de 2000, Ley Núm. 404-2000, 25 LPRA sec. 458(c) y 458n(d) (derogada), casos número DLA2018G0160 y DLA2018G0159, respectivamente.[1]

Tras celebrarse el juicio en su contra por tribunal de derecho, el 14 de agosto de 2019 el Tribunal de Primera Instancia encontró culpable al señor Rivera Ortiz por los tres delitos que le imputaron.[2] Así, el **29 de agosto de 2019**, el foro primario dictó sentencia en corte abierta y condenó al peticionario a cumplir una pena de noventa y nueve (99) años por el delito de asesinato en primer grado, diez (10) años por la infracción al Art. 5.04 de la Ley de Armas, supra, y veinte (20) años por infracción al Art. 5.15(d) de

---

[1] Acusaciones, Apéndice, págs. 1-6.
[2] Sentencia, Apéndice, págs. 8-9.

esa misma Ley. Estas últimas dos penas se duplicaron en virtud del artículo 7.03 de la Ley de Armas, para un total de 159 años de reclusión.[3]

Así, el 13 de septiembre de 2019 el peticionario presentó una *Moción de reconsideración*. Solicitó al foro primario "reconsideración de la sentencia emitida en cuanto al artículo 5.15 de la [L]ey de Armas".[4] Adujo que no desfiló prueba suficiente para probar más allá de duda razonable que el peticionario apuntó o disparó un arma de fuego desde un vehículo de motor, elementos necesarios para que se configure el delito que proscribe el Art. 5.15(d) de la Ley de Armas, supra. En síntesis, arguyó que la declaración del testigo de cargo era insuficiente para sostener la condena, toda vez que el testigo declaró que él y el peticionario no estaban en el mismo vehículo al momento de los hechos.[5] Añadió que el testigo tampoco precisó si vio al peticionario apuntar o disparar un arma de fuego. Ante ello, solicitó que se reconsiderara la convicción del peticionario en cuanto al cargo por la infracción al Art, 5.15(d) de la Ley de Armas, supra, y se modificara el fallo a uno de no culpabilidad.[6] El peticionario no solicitó en la moción de referencia que el foro primario reconsiderara las sentencias que emitió en los cargos de asesinato en primer grado e infracción al Art. 5.04 de la Ley de Armas, supra.

---

[3] La *Sentencia* se notificó el 10 de septiembre de 2019. Notificación de la Sentencia, Apéndice, pág. 7.
[4] Moción de Reconsideración, Apéndice, pág. 10.
[5] Íd., págs. 10-11.
[6] Íd., pág. 11.

Antes de que el Tribunal de Primera Instancia se expresara sobre la solicitud de reconsideración, el **30 de septiembre de 2019** el señor Rivera Ortiz presentó un recurso de apelación ante el Tribunal de Apelaciones. Este se identificó con el alfanumérico KLAN201901114 (en adelante, "primera apelación").[7] Allí esgrimió cinco señalamientos de error que versaban sobre la suficiencia de la prueba **en los tres cargos por los que resultó convicto,** entiéndase, los casos DVI2018G0037, DLA2018G0160, DLA2018G0159. También argumentó violaciones a la protección constitucional contra registros y allanamientos irrazonables y la igual protección de las leyes.[8]

El **3 de octubre de 2019** el Tribunal de Primera Instancia notificó una resolución en la que declaró *no ha lugar* la solicitud de reconsideración que el peticionario presentó el 13 de septiembre de 2019.[9] Ello, mientras la primera apelación del señor Rivera Ortiz estaba ante la consideración del foro apelativo intermedio.

Previo a que el Tribunal de Apelaciones emitiera un dictamen sobre la primera apelación, el **8 de octubre de 2019** el señor Rivera Ortiz presentó otro recurso de apelación. Este se identificó con el alfanumérico KLAN201901143 (en adelante, "segunda apelación"). Allí el señor Rivera Ortiz presentó exactamente los mismos señalamientos de error que

---

[7] Apelación ante el Tribunal de Apelaciones del 30 de septiembre de 2019, Apéndice, págs. 16-18.
[8] Escrito de apelación, Apéndice, pág. 18.
[9] El dictamen denegatorio del Tribunal de Primera instancia se emitió el 30 de septiembre de 2019, pero se notificó el 3 de octubre de 2019.

esgrimió en la primera apelación.[10]

El 10 de octubre de 2019 el Tribunal de Apelaciones dictó una sentencia en la primera apelación en la que desestimó el recurso de apelación en el caso KLAN201901114 por falta de jurisdicción.[11]

En su dictamen, el foro apelativo intermedio concluyó que el recurso de apelación identificado como KLAN201901114, que se presentó el 30 de septiembre de 2019, era prematuro. Razonó que la *Moción de reconsideración* interpuesta oportunamente por la parte peticionaria interrumpió el término de treinta (30) días para acudir ante el Tribunal de Apelaciones. Determinó que, como la resolución del foro primario que adjudicó la moción de reconsideración fue archivada en autos con posterioridad a la fecha en que se presentó la primera apelación, el foro revisor carecía de jurisdicción para atender la apelación en los méritos.

Posteriormente, el 31 de octubre de 2019, el Tribunal de Apelaciones dictó sentencia en el caso KLAN201901143. En esta desestimó la segunda apelación por falta de jurisdicción.[12] En esta ocasión, el Tribunal de Apelaciones razonó que el peticionario presentó oportunamente una moción de reconsideración ante el Tribunal de Primera Instancia únicamente para que se revisara la convicción por la infracción al Art. 5.15(d) de la Ley de Armas, <u>supra</u>, en el

---

[10] En su segunda apelación, el peticionario también informó que el Tribunal de Primera Instancia había denegado su solicitud de reconsideración.
[11] Sentencia en el KLAN201901114, Apéndice, págs. 28-31. La sentencia se notificó el 11 de octubre de 2019.
[12] Sentencia en el KLAN201901143, Apéndice, págs. 33-39.

caso DLA2019G0159 y no así para el resto de los delitos por los que resultó convicto, entiéndase los casos DLA2018G0160 y DVI2018G0037. Ante ello, afirmó que el término jurisdiccional para acudir en apelación se interrumpió solo para la sentencia por la cual solicitó reconsideración. A su juicio, el término jurisdiccional para presentar un recurso de apelación para las sentencias por asesinato en primer grado (DVI2018G0037) y la infracción al Art. 5.04 de la Ley de Armas, supra, (DLA2018G160) comenzó a transcurrir el 29 de agosto de 2019, fecha en la que el foro primario dictó sentencia por cada cargo en corte abierta. En consecuencia, concluyó que el recurso era tardío en cuanto a esas dos sentencias.

Sobre la sentencia en el caso DLA2019G0159, el foro apelativo intermedio planteó que la apelación que presentó el peticionario también estaba a destiempo. Para concluir lo anterior, tomó conocimiento judicial de la primera apelación que presentó el señor Rivera Ortiz ante ese foro. Indicó que el peticionario presentó su segunda apelación antes de que el panel que atendió la primera apelación notificara la sentencia en la que desestimó el recurso por prematuro.

Inconforme, el señor Rivera Ortiz recurrió ante nosotros. Señaló que el Tribunal de Apelaciones erró al no atender los méritos de su petitorio y presentar dos dictámenes con fundamentos conflictivos entre sí. Arguyó que, por un lado, el panel que atendió la primera apelación descansó implícitamente en la premisa de que la *Moción de*

*reconsideración*, aunque dirigida en los méritos a atender una de las sentencias, interrumpió el término para recurrir al Tribunal de Apelaciones de todas las sentencias que obtuvo del mismo procedimiento judicial. Por lo tanto, de ser correcta esa premisa, el escollo jurisdiccional se corrigió al presentar su segunda apelación, la cual solicitaba la revisión íntegra de todos los cargos por los que resultó culpable en el mismo juicio que se celebró en su contra. Bajo ese razonamiento, arguye que el panel que atendió la segunda apelación erró al determinar que la presentación de su moción de reconsideración creó dos términos distintos para acudir en apelación por sentencias provenientes del mismo juicio.

El señor Rivera Ortiz expuso que, de determinarse que la moción de reconsideración que presentó ante el foro primario, en efecto, creó términos distintos para acudir en apelación, la primera apelación fue oportuna, al menos, en cuanto a los cargos por los cuales no solicitó reconsideración. Por lo tanto, correspondía que, en la alternativa, el panel que atendió la segunda reconsideración reconociera que este acudió a tiempo en esa ocasión para las sentencias en los casos DLA2018G0160 y DVI2018G0037 y atendiera todos los señalamientos de error que presentó en cuanto a las tres sentencias emitidas en el juicio que se ventiló en su contra.

Este Tribunal acogió el recurso que se presentó como un *certiorari* y expedimos el auto. En su alegato, el peticionario esbozó los mismos fundamentos que presentó en su recurso ante nos. Por su parte, el Estado razonó que la presentación de la

moción de reconsideración para uno de los cargos creó la confusión que llevó a que dos paneles del foro apelativo intermedio entendieran que no tenían jurisdicción para atender la controversia. A su juicio, si bien el Tribunal de Primera Instancia dictó sentencia para cada uno de los cargos en un solo acto, la presentación de la moción de reconsideración para uno de ellos creó una separación de las sentencias emitidas para propósitos de la reconsideración y la apelación. Por ello, entendió que el primer panel erró al desestimar la apelación en cuanto a los dos cargos no reconsiderados y que actuó correctamente al desestimar con relación al cargo reconsiderado. El Procurador General razonó que el peticionario falló al presentar dos recursos de apelación sobre las mismas tres sentencias, en lugar de recurrir en la primera apelación de las dos sentencias que no eran objeto de reconsideración y en una apelación separada de la sentencia reconsiderada.

A tono con lo anterior, el Procurador General destacó que el segundo panel resolvió correctamente al desestimar las dos sentencias no reconsideradas debido a que eran tardías. Empero, entiende que el Tribunal de Apelaciones debió atender el cargo reconsiderado —entiéndase, la sentencia por infracción al Art. 5.15(d) de la Ley de Armas, supra, porque se presentó en apelación dentro del término jurisdiccional.

Con el beneficio de la comparecencia de ambas partes, resolvemos.

## II

### A. Jurisdicción

La jurisdicción es el poder de un tribunal para considerar y decidir casos y controversias. Cancel Rivera v. González Ruiz, 200 DPR 319, 329 (2018). Cuando el tribunal carece de jurisdicción sobre la materia, las consecuencias son las siguientes:

> (1) no es susceptible de ser subsanada; (2) las partes no pueden voluntariamente conferírsela a un tribunal como tampoco puede éste arrogársela; (3) conlleva la nulidad de los dictámenes emitidos; (4) impone a los tribunales el ineludible deber de auscultar su propia jurisdicción; (5) impone a los tribunales apelativos el deber de examinar la jurisdicción del foro de donde procede el recurso, y (6) puede presentarse en cualquier etapa del procedimiento, a instancia de las partes o por el tribunal motu proprio. Fuentes Bonilla v. ELA et al., 200 DPR 364, 372-373 (2018).

En función de ello, la Regla 212 de Procedimiento Criminal, 34 LPRA Ap. II, dispone los fundamentos por los cuales procede una desestimación de una apelación de naturaleza criminal:

> (a) Que el Tribunal […] de Apelaciones carece de jurisdicción para considerar la apelación o certiorari;
> (b) que no se ha perfeccionado la apelación o certiorari de acuerdo con la ley y reglas aplicables;
> (c) que no se ha proseguido con la debida diligencia, o
> (d) que el recurso es frívolo o ha sido presentado para demorar los procedimientos. Íd.

En vista de lo anterior, si un recurso de apelación se presenta mientras el tribunal apelado tiene ante su consideración una determinación, que se encuentra pendiente

y no ha sido resuelta, el foro apelativo debe desestimar el recurso por ser este prematuro. Yumac Home Furniture v. Caguas Lumber Yard, 194 DPR 96, 107 (2015). Por el contrario, un recurso de apelación que se presenta luego del término que provee la ley para recurrir debe desestimarse por ser un recurso tardío. Íd. La presentación prematura o tardía del recurso priva de jurisdicción al tribunal al cual se recurre.

Ahora bien, las consecuencias son distintas debido a que la desestimación de un recurso por prematuro permite a la parte afectada presentarlo nuevamente en el momento oportuno. Rodríguez v. Zegarra, 150 DPR 649, 654 (2000). En cambio, la desestimación de un recurso tardío es final. Lo determinante para concluir si un recurso es prematuro o tardío es su fecha de presentación. Mun. de Rincón v. Velázquez Muñiz, 192 DPR 989, 1018 (2015). Como se aprecia se debe cumplir estrictamente todo el procedimiento para apelar o, de lo contrario, el tribunal revisor no tendrá jurisdicción sobre el asunto. Pueblo v. Prieto Maysonet, 103 DPR 102, 105 (1974).

Al mismo tiempo, las leyes "que regulan la jurisdicción o la facultad de los tribunales de atender y resolver las controversias ante sí de la ciudadanía, son de alto interés público" por lo que "[e]s nuestro deber destacar, que en nuestro sistema de derecho existe una política judicial que fomenta el mayor acceso posible de los ciudadanos a los tribunales para que sus controversias puedan ser resueltas en

los méritos". <u>Negrón Placer v. Srio. De Justicia</u>, 154 DPR 79,
93 (2001).

**B. Acumulación de delitos en un mismo procedimiento judicial**

El ordenamiento procesal penal permite la acumulación de
delitos en un mismo procedimiento penal al amparo de las
Reglas de Procedimiento Criminal. Ello responde a
consideraciones sobre la "deseabilidad de un enjuiciamiento
global, **con la celebración de un solo juicio** para la
determinación de responsabilidad criminal de cada acusado o
por cada delito". (Énfasis suplido). Ernesto L. Chiesa
Aponte, <u>Derecho Procesal Penal de Puerto Rico y Estados
Unidos</u>, Ed. Forum, 1995, Vol. 3, pág. 129. Sobre el interés
social en la acumulación de delitos y la consolidación de
juicios, el Tribunal Supremo federal ha expresado que:

> Joint trials play a vital role in the criminal
> justice system, accounting for almost one-third of
> federal criminal trials in the past five years […].
> It would impair both the efficiency and the
> fairness of the criminal justice system to require,
> in all these cases of joint crimes […], that
> prosecutors bring separate proceedings, presenting
> the same evidence again and again, requiring
> victims and witnesses to repeat the inconvenience
> (and sometimes trauma) of testifying, and randomly
> favoring the last-tried defendants who have the
> advantage of knowing the prosecution's case
> beforehand. Joint trials generally serve the
> interests of justice by avoiding inconsistent
> verdicts and enabling more accurate assessment of
> relative culpability—advantages which sometimes
> operate to the defendant's benefit. Even apart from
> these tactical considerations, joint trials
> generally serve the interests of justice by
> avoiding the scandal and inequity of inconsistent
> verdicts. <u>Richardson v. Marsh</u>, 481 US 200, 209-210
> (1987).

A tono con lo anterior, conforme con la Regla 37(a) de Procedimiento Criminal, 34 LPRA Ap. II, "[e]n la misma acusación o denuncia se podrán imputar dos o más delitos, en cargos por separado para cada uno de ellos, si los delitos imputados fueren de igual o similar naturaleza, o hubieren surgido del mismo acto o transacción, o de dos o más actos o transacciones relacionadas entre sí o que constituyeren partes de un plan común. Las alegaciones de un cargo podrán incorporarse en los demás cargos por referencia". Íd.[13] Según el profesor Ernesto L. Chiesa Aponte:

> La razón de ser de esta norma de acumulación permisible de delitos es que nada se ganaría con la separación en términos de ventaja al imputado, pues la estrecha relación entre los delitos entre sí, en cuanto a la totalidad de los hechos que constituyen la conducta criminal, acarrea que en juicios por separado, con toda probabilidad evidencia de la comisión de los delitos sea admisible contra el acusado. E. L. Chiesa Aponte, op. cit., pág. 130.

Asimismo, la Regla 37(a) de Procedimiento Criminal, supra, exige que la acumulación de delitos a un acusado en un mismo procedimiento criminal **se haga en cargos separados.** Esto es, un delito por cargo. Según el profesor Chiesa Aponte, "[s]i en un mismo cargo se alude a distintas actividades delictivas, solo se estaría imputando válidamente un cargo o delito". Este razonamiento es cónsono con lo dispuesto en la Regla 64(j) de Procedimiento Criminal, 34 LPRA Ap. II, que permite que un acusado pueda solicitar la desestimación de la acusación o denuncia por el fundamento de que "uno o más de

---

[13] En igual sentido, véase la Regla 8(a) de Procedimiento Criminal Federal.

los cargos de la acusación o la denuncia imputan más de un delito". Íd.; E.L. Chiesa Aponte, op. cit., pág. 133.

De igual forma, nada en la Reglas de Procedimiento Criminal impide que el Ministerio Público pueda presentar distintos cargos acumulables al amparo de la Regla 37(a) en acusaciones separadas. En esos casos, la Regla 89 de Procedimiento Criminal, 34 LPRA Ap. II, permite que el tribunal ordene "que dos o más acusaciones sean vistas conjuntamente si los delitos […] pudieron haber sido unidos en una sola acusación o denuncia". En ese caso, la Regla instruye que "**[e]l proceso se seguirá como si se tratare de una sola acusación o denuncia**". Íd. (Énfasis suplido).

No obstante lo anterior, no se puede perder de perspectiva que el objetivo de la acusación "no es cumplir mecánicamente con una forma ritual, sino informar al acusado el delito [o delitos] que se le imputa, de tal suerte que pueda preparar adecuadamente su defensa". (Citas depuradas). Pueblo v. Meléndez Cartagena, 106 DPR 338, 341 (1977). Ciertamente, uno de los propósitos de la acumulación de delitos "es la economía procesal", de forma "que pueda evitarse la innecesaria duplicación de juicios". E.L. Chiesa Aponte, op. cit., pág. 134. Ante ello, valga aclarar que la permisibilidad de acumular delitos al amparo de la Regla 37(a) o la Regla 89 de Procedimiento Criminal, supra, no puede supeditar los derechos constitucionales o estatutarios de los

acusados.[14]

Ahora bien, una vez finaliza el juicio, en casos en los que se celebró juicio por jurado, este último podrá "rendir un veredicto o tantos veredictos como fueran necesarios respecto a uno o más de los cargos de la acusación". Regla 150 de Procedimiento Criminal, 34 LPRA Ap. II. Consiguientemente, el tribunal emite un fallo condenatorio o absolutorio. Regla 160 de las Reglas de Procedimiento Criminal, 34 LPRA Ap. II. R. 160; Pueblo v. Silva Colón, 184 DPR 759, 777 (2012). En los casos en que no se hubiera celebrado el juicio por tribunal de derecho, el tribunal pronunciará el fallo de conformidad con los veredictos rendidos o la alegación de culpabilidad, según sea el caso. Regla 160 de Procedimiento Criminal, supra. "El fallo es, pues, el pronunciamiento de absolución o culpabilidad que hace el juez". Ernesto Chiesa Aponte, op. cit., pág. 519.

---

[14] Sobre el particular, el profesor Chiesa Aponte razona:

Si los delitos imputados a un acusado son acumulables bajo la Regla 37(a), la mejor práctica es la acumulación. El Tribunal Supremo de Puerto Rico ha señalado que si bien la Regla 37 no le impone al fiscal la obligación de acumular dos o más delitos que surgen del mismo acto o transacción, "la práctica reconocidamente más recomendable es acumular en una misma acusación o denuncia dos o más delitos, en cargos por separado, si los delitos imputados fueren de igual o similar naturaleza o hubieran surgido del mismo acto o transacción" [Fuentes Morales v. Tribunal Superior, 102 DPR 705, 707 (1994)]. E.L. Chiesa Aponte, op. cit., pág. 134.

No obstante, el profesor Chiesa Aponte aclara que, "[p]or supuesto, el acusado o El Pueblo pueden solicitar la separación si estiman que la consolidación ha de perjudicarle". Íd. En lo pertinente, la Regla 90 de Procedimiento Criminal, 34 LPRA Ap. II, permite la separación de los delitos acumulados cuando "se demostrare que un acusado o El Pueblo han de perjudicarse por haberse unido varios delitos o acusados en una acusación o denuncia, o por la celebración del juicio conjuntamente", permitiendo que el tribunal pueda "ordenar el juicio por separado de delitos o de acusados, o conceder cualquier otro remedio que en justicia proceda". Íd.

A tenor de la normativa anterior, en los juicios celebrados en los que se acumularon varios delitos, el tribunal pronunciará el fallo correspondiente para cada uno de los cargos por los que se enjuició el acusado. Posteriormente, el tribunal señalará una fecha para dictar sentencia, de conformidad con los fallos emitidos, en cumplimiento con los términos dispuestos en las Reglas de Procedimiento Criminal. Regla 162 de Procedimiento Criminal, 34 LPRA Ap. II. Ello es así, pues el principio de judicialidad instituye que la sentencia judicial es el único medio donde se impondrá una pena o medida de seguridad. Artículo 10 del Código Penal, 33 LPRA sec. 5010.

**C. El derecho a apelar las sentencias finales del Tribunal de Primera Instancia**

En Puerto Rico existe el derecho de todo acusado a apelar cualquier convicción penal que recaiga en su contra. En <u>Pueblo v. Serbiá</u>, 78 DPR 788 (1955), este Tribunal determinó que:

> Generalmente el derecho de apelación no es un derecho constitucional en el sentido de no haber sido incluido específicamente como uno de los derechos inalienables dentro de la constitución. **Es cierto que tan pronto el derecho a apelación se incorpora a un sistema de justicia pública, por acción legislativa, entra a formar parte del debido proceso de ley y por lo tanto adquiere una categoría cuasi-constitucional** pero no es menos cierto, que tratándose de un derecho que inicialmente es estatutario, la Legislatura tiene el derecho de prescribir la forma en que se ha de apelar. (Énfasis suplido y citas depuradas). <u>Íd</u>. pág. 792.

Aunque el derecho de apelación no se encuentra en nuestra

Carta de Derechos, es un privilegio estatutario de carácter cuasi constitucional. En vista de lo anterior, este Tribunal tiene que garantizar que no se prive de dicho derecho "al acusado convicto de una manera arbitraria, irrazonable, discriminatoria o que viole las garantías constitucionales del debido proceso de ley e igual protección de las leyes". Pueblo v. Esquilín Díaz, 146 DPR 808, 816 (1998). Después de todo, "el derecho de apelación, aunque no se consagre en la Constitución, entra a formar parte del debido proceso de ley y adquiere una categoría cuasi constitucional una vez incorporado al sistema de justicia pública por acción legislativa". Pueblo v. Prieto Maysonet, supra, pág. 104. Además, ya expresamos que:

> Es indudable que, si en determinado caso, el procedimiento de apelación dispuesto por el estatuto e invocado debidamente por el acusado, resulta inadecuado o su aplicación uniforme puede ser dudosa, por condiciones económicas adversas, por incomunicación del apelante, etc., tal contrariedad constituye no solo una negación del debido proceso de ley, sino también una negación de la igual protección de las leyes, transformándose la cuestión estatutaria en una cuestión constitucional. **En tal caso, los tribunales deben examinar cuidadosamente todas las circunstancias del caso, no en sentido negativo sino con ánimo reparador, y tomar todas las medidas que sean necesarias para que el apelante obtenga la revisión objetiva sobre los méritos que se propone toda apelación.** (Énfasis suplido y citas depuradas). Reyes v. Delgado, 81 DPR 937, 942 (1960).

Por otro lado, el Art. 4.002 de la Ley de la Judicatura de Puerto Rico de 2003, 4 LPRA sec. 24u, según enmendada, dispone que el Tribunal de Apelaciones "revisará, como

cuestión de derecho, las **sentencias finales del Tribunal de Primera Instancia** […] y de forma discrecional, cualquier otra resolución u orden dictada [por ese foro]". (Énfasis suplido). En términos generales, hemos definido *sentencia final* "como cualquier determinación del tribunal que resuelva finalmente la cuestión litigiosa". Pueblo v. Rodríguez Meléndez, 150 DPR 519, 522 (2000); De Jesús v. Corp. Azucarera de PR, 145 DPR 899 (1998). Este principio general sobre el concepto de *sentencia final* comprende tanto a los casos civiles como a los criminales. H. A. Sánchez Martínez, *Derecho Procesal Apelativo*, Lexis-Nexis, 2001, pág. 371.

Ahora bien, en atención a las características inherentes a los procedimientos judiciales de naturaleza penal, la Regla 162 de Procedimiento Criminal, 34 LPRA Ap. II, define el término *sentencia* como el "pronunciamiento hecho por el tribunal en cuanto a la pena que se le impone al acusado". Como vimos, el acto de dictar sentencia en los procedimientos penales ocurre posterior a que el tribunal emita un fallo condenatorio o absolutorio. Asimismo, "[e]l fallo se distingue de la sentencia en que [e]sta incluye el pronunciamiento del tribunal en cuanto a la pena que acarrea el fallo de culpabilidad". E. L. Chiesa Aponte, op. cit., pág. 520; *véase* Pueblo v. Tribunal Superior, 94 DPR 220, 223 (1967).

Valga recalcar que una característica particular del derecho apelativo penal es que solo el acusado posee dicho derecho estatutario: "[l]as **sentencias finales** dictadas en

casos criminales originados en el Tribunal de Primera Instancia podrán ser apeladas por el acusado en la forma prescrita por estas reglas". (Énfasis suplido). Regla 193 de las Reglas de Procedimiento Criminal, 34 LPRA Ap. II.

De esa forma, la Regla 194 de Procedimiento Criminal, 34 LPRA Ap. II, concede un término jurisdiccional de "treinta (30) días siguientes a la fecha en que la sentencia fue dictada" para presentar la apelación correspondiente en aquellos casos aplicables. Así, la "apelación se formalizará presentando un escrito de apelación a la secretaría de la sala del Tribunal de Primera Instancia que dictó la sentencia o en la secretaría del Tribunal de Apelaciones". Íd. Por su parte, le Regla de referencia dispone que cuando la persona estuviese presente en la sala al momento de ser dictada la sentencia, "el término se calculará a partir de ese momento". Íd.

Finalmente, al enfrentarse a su función revisora en los procesos de naturaleza penal, la norma de aplicación general "es que **los tribunales apelativos pueden considerar cualquier error de derecho cometido por el Tribunal de Primera Instancia**". (Énfasis suplido). H. Sánchez Martínez, op. cit., pág. 614. Lo anterior incluye los errores de derecho que comete el foro primario durante el procedimiento judicial. Ello pues la función de aplicar correctamente el derecho "es privativa del juez y en virtud de esa facultad el tribunal está en libertad de aplicar la norma que estime pertinente y adecuada". Coll v. Picó, 82 DPR 27, 36 (1960). Asimismo, los

tribunales apelativos están en posición de evaluar asuntos combinados de hecho y derecho. Pueblo v. Irizarry, 156 DPR 780, 788 (2002). No obstante, al enfrentarnos a la tarea de revisar cuestiones relativas a convicciones criminales, la norma arraigada es que las determinaciones de hechos y la apreciación de la prueba corresponden, en primera instancia, al foro sentenciador. Íd., págs. 788-789. Por consiguiente, los tribunales apelativos sólo intervendrán con tal apreciación cuando se demuestre la existencia de pasión, prejuicio, parcialidad o error manifiesto. Íd., pág. 789.

**D. La reconsideración**

A pesar de lo anterior, antes de presentar algún recurso al Tribunal de Apelaciones, las partes pueden presentar una moción de reconsideración bajo la Regla 194 de las Reglas de Procedimiento Criminal, 34 LPRA Ap. II. La moción de reconsideración "es una apelación a la clemencia del foro juzgador para que vuelva a considerar, según su criterio, lo que ya dispuso". Pueblo v. Silva Colón, 184 DPR 759, 778 (2012). Como hemos reiterado en múltiples instancias, "[e]l objetivo principal de una moción de reconsideración es dar una oportunidad a la corte que dictó la sentencia o resolución cuya reconsideración se pide, para que pueda enmendar o corregir los errores en que hubiese incurrido al dictarla". Íd. pág. 768 (*citando a* Lagares v. E.L.A., 144 DPR 601, 609 (1996)). *Véase además* Dávila v. Collazo, 50 DPR 494, 503 (1936). De allí a que un juez o jueza pueda "[i]nspeccionar y corregir sus providencias y órdenes con el fin de ajustarlas

a la ley y la justicia". Artículo 2.014 de la Ley de la Judicatura, 4 LPRA sec. 24o. Es decir, "es ampliamente conocido que los tribunales tienen el poder inherente de reconsiderar sus determinaciones, a solicitud de parte o motu proprio, mientras conserven jurisdicción sobre los casos". Pueblo v. Silva Colón, supra, pág. 768; Pueblo v. Román Feliciano, 181 DPR 679, 684 (2011). Después de todo, según ha expresado la Asamblea Legislativa, el objetivo de la reconsideración es "evitar las apelaciones innecesarias al darle al tribunal sentenciador la oportunidad de resolver sus errores".[15]

Así, la Regla 194 de las Reglas de Procedimiento Criminal, 34 LPRA Ap. II, dispone:

> **La apelación se formalizará presentando un escrito de apelación** en la secretaría de la sala del Tribunal de Primera Instancia que dictó la sentencia o en la secretaría del Tribunal de Apelaciones, **dentro de los treinta (30) días siguientes a la fecha en que la sentencia fue dictada** […].
> **Si cualquier parte solicitare la reconsideración de la sentencia** o del fallo condenatorio dentro del término improrrogable de quince (15) días desde que la sentencia fue dictada, **el término para radicar el escrito de apelación o certiorari quedará interrumpido** y el mismo comenzará a partir de la fecha en que se archive en autos la notificación de la resolución del tribunal adjudicando la moción de reconsideración.
> […]. (Énfasis suplido). Íd.

De esta manera, la Regla 23 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 23 (A), recoge la

---

[15] Informe del Senado sobre el sustitutivo al P. de la C. 1777, 25 de octubre de 1995, págs. 2 y 3, https://sutra.oslpr.org/osl/SUTRA/anejos_conv/od/files/docs/%7B23CA27E1-FE46-4D2C-A967-93E7F3250993%7D.pdf.

esencia de la Regla 194:

> La apelación de cualquier sentencia final dictada en un caso criminal originado en el Tribunal de Primera Instancia se presentará dentro del término de treinta días siguientes a la fecha en que la sentencia haya sido dictada. Este término es jurisdiccional, pero si dentro del término indicado se presentare […] una moción de reconsideración fundada en la Regla 194 de Procedimiento Criminal, según enmendada, **el escrito de apelación podrá presentarse dentro de los treinta días siguientes a aquel en que se notificare al acusado o acusada la orden del tribunal que […] adjudica la moción de reconsideración**. (Énfasis suplido). Íd.

Aparte de lo discutido anteriormente, las Reglas de Procedimiento Criminal no proveen un marco regulatorio expreso y detallado sobre los efectos de la presentación de la moción de reconsideración en los procesos criminales. Por ello, ha correspondido a este Tribunal construir los confines en los que opera la moción de reconsideración a nivel del foro de primera instancia en el procedimiento penal.

Así, por ejemplo, en Pueblo v. Valdéz Sánchez, 140 DPR 490 (1996), aclaramos que el término *sentencia*, para propósitos de la Regla 194 de Procedimiento Criminal, supra, no se limita a la imposición de la pena. Allí razonamos que, al adoptar el término *sentencia*, la Asamblea Legislativa se refería también al fallo condenatorio. Íd., pág. 496. A tenor de ello, razonamos que la reconsideración se extiende a la revisión de los méritos de la controversia y, por ende, a la determinación o fallo de culpabilidad, así como a la legalidad o severidad de la pena. Pueblo v. Silva Colón, supra, pág.770;

Pueblo v. Valdéz Sánchez, supra.

Asimismo, en Pueblo v. Santana Rodríguez, 148 DPR 400 (1999), determinamos que la presentación oportuna de una moción de reconsideración al amparo de la Regla 194 de Procedimiento Criminal, supra, impide al Tribunal de Apelaciones asumir jurisdicción para atender un recurso de apelación por prematuro. Allí, el señor Santana Rodríguez presentó una moción de reconsideración ante el Tribunal de Primera Instancia y al día siguiente presentó una apelación ante el Tribunal de Apelaciones. En esa ocasión, el foro judicial intermedio no lo atendió por ser prematuro. No obstante, lo conservó hasta tanto el foro primario adjudicó la reconsideración. Ocurrido lo anterior, lo atendió sin que el señor Santana Rodríguez presentara un nuevo recurso de apelación. En consecuencia, revocamos al foro apelativo intermedio y expresamos que este "carecía de jurisdicción para reactivar su prematura apelación". Íd., pág. 406. De esta manera, validamos con esta decisión que toda reconsideración presentada al amparo de la Regla 194 de Procedimiento Criminal, supra, impide la presentación de un recurso de apelación sobre dicha sentencia hasta tanto no se adjudique la moción de reconsideración.

### III

La controversia medular en este caso se reduce a determinar el efecto que tiene la presentación de una moción de reconsideración al amparo de la Regla 194 de Procedimiento Criminal, supra, en la que no se solicite reconsideración de

todas las sentencias emitidas en un mismo procedimiento judicial. Específicamente, corresponde determinar el efecto en lo que atañe al término jurisdiccional para presentar un recurso de apelación para las sentencias emitidas sobre el resto de los cargos acumulados al amparo de las Reglas de Procedimiento Criminal. Ello se da aun cuando estas últimas no fueran objeto del recurso de reconsideración.

Según vimos, la Regla 194 de Procedimiento Criminal, supra, no distingue de los efectos de la presentación de una moción de reconsideración en los casos de acumulación de delitos, proceso en el cual todos los cargos que emanan de los mismos hechos y se adjudicaron en un solo juicio. La estabilidad y eficiencia de los trámites apelativos, así como en consideraciones pragmáticas, nos llevan a rechazar una norma que fomente la fragmentación entre el foro primario y el apelativo intermedio. De igual forma, no avalamos adoptar una norma que bifurque la revisión apelativa de unas sentencias que provienen de un mismo proceso judicial y que aumente innecesariamente la posibilidad de que se dicten dictámenes contradictorios.

Según mencionamos, la Regla 194 de Procedimiento Criminal, supra, le concede a toda persona convicta en un proceso criminal el derecho a que el Tribunal de Primera Instancia reconsidere su sentencia. Ello responde al poder inherente de los tribunales de reconsiderar, **a solicitud de parte o *motu proprio*,** sus determinaciones mientras aún conserven la jurisdicción en sus casos. Pueblo v. Román

Feliciano, supra. Por ende, cuando se presenta oportunamente la moción de reconsideración, el foro primario retiene jurisdicción para revaluar en todo o en parte su sentencia. Es decir, puede reconsiderar tanto lo que una parte le solicite, así como cualquier otro aspecto de sus sentencias que entienda requiera corregir. Para realizar esa labor eficazmente, **el foro primario tiene que conservar la jurisdicción plena del caso que tiene ante sí**. Recordemos que, cónsono con nuestras determinaciones anteriores, el Tribunal de Primera Instancia tiene la facultad de revisar, no solo la legalidad de la pena que impuso, sino los méritos de las controversias que atendió y, por ende, los fallos de culpabilidad. Pueblo v. Silva Colón, supra, pág. 770; Pueblo v. Valdés Sánchez, supra, pág. 496. Esa tarea se limita si se les exige a las personas convictas —que no interesen que el foro primario evalúe todas las sentencias dictadas en un mismo proceso judicial— fragmentar sus petitorios de revisión sobre el mismo juicio para la atención simultánea tanto del Tribunal de Primera Instancia —para algunos cargos— como del Tribunal de Apelaciones para otros. Lo anterior limita el propósito de la reconsideración en los casos penales y disuade el uso de este mecanismo al imponer más trabas a la persona convicta para apelar sus sentencias.

Por otro lado, el efecto descrito anteriormente aplicaría similarmente a las determinaciones entre paneles del Tribunal de Apelaciones por recursos múltiples presentados para revisar las sentencias impuestas en un mismo

proceso penal. Según esbozamos anteriormente, la función revisora del foro apelativo intermedio en las apelaciones de casos criminales comprende la revisión de los errores que se le imputa haber cometido el Tribunal de Primera Instancia en el proceso judicial que se celebró en contra de la persona convicta. En aras de evitar la revisión fraccionada entre paneles, el Tribunal de Apelaciones se vería obligado a retener los recursos que tiene ante sí. Tendría que quedar en espera a que se determine si la persona apelante presentará o no un recurso una vez se adjudique su moción de reconsideración, en aras de consolidarlo y proveer una revisión íntegra del proceso. Esto no solo carece de sustento en el derecho aplicable, sino que representa un golpe al acceso a la justicia, es altamente impráctico y generaría inconveniencias para todas las partes.

Hoy resolvemos que una moción de reconsideración de una sentencia dictada en un procedimiento criminal en el que se acumularon dos o más delitos, interrumpe el término para apelar de todas las demás sentencias por encontrarse inextricablemente vinculadas. En consecuencia, en estos casos, el término para apelar de todas las sentencias dictadas en un mismo procedimiento judicial comienza a transcurrir a partir de que se archive en autos la notificación de la resolución del tribunal que adjudicó la moción de reconsideración. Asimismo, conforme a la Regla 194 de Procedimiento Criminal, _supra_, cuando la persona esté presente en la sala al momento de dictarse la resolución, el

término se calculará a partir de ese momento.

Tres factores neurálgicos son el norte de esta determinación. Primero: el derecho de apelación en materia penal es de rango cuasi constitucional por lo que entra a formar parte del debido proceso de ley una vez incorporado al sistema de justicia por acción legislativa. Por ende, los tribunales estamos llamados a garantizar que no se prive de ese derecho "al acusado convicto de una manera arbitraria, irrazonable, discriminatoria o que viole las garantías constitucionales del debido proceso de ley e igual protección de las leyes". Pueblo v. Esquilín Díaz, supra, pág. 816. Asimismo, la Regla 1 de Procedimiento Criminal, 34 LPRA Ap. II, dispone que estas se interpretarán "de modo que aseguren la tramitación justa de todo procedimiento y eviten dilaciones y gastos injustificados". Lo anterior se acentúa con la máxima de "propiciar un sistema de justicia en el que se provea acceso inmediato y económico para atender los reclamos de la ciudadanía, que sea sensible a la realidad particular de los distintos componentes de nuestra sociedad". Ley de la Judicatura, supra, Exposición de motivos.

Segundo: la norma que hoy establecemos es análoga a los principios que sustentan la consolidación de los delitos y el enjuiciamiento global que permiten las Reglas de Procedimiento Criminal, supra. Según vimos, la revisión íntegra de los procesos criminales celebrados a nivel del foro de primera instancia disuade la proliferación de dictámenes múltiples e inconsistentes. Lo anterior también

provee una normativa clara a los foros inferiores en cuanto al alcance de sus funciones revisoras en tales circunstancias lo que, a su vez, provee estabilidad en cuanto al trámite procesal que se ha de seguir tanto para los foros inferiores como para las partes concernidas.

Tercero: lo que hoy determinamos es cónsono con el canon de hermenéutica que nos exige interpretar de manera armoniosa y holística con miras de evitar contradicciones y tensiones. Después de todo, las leyes deben ser interpretadas como una sola entidad, dándole efecto a todas sus disposiciones. R. Elfrén Bernier, J.A. Cuevas Segarra, *Aprobación e Interpretación de las Leyes en Puerto Rico*, 2da ed. Rev., San Juan, Publicaciones JTS Inc., 1987, Vol. I, págs. 315. Como expresamos en una ocasión:

> Ello se fundamenta en el canon de interpretación hermenéutica sobre lectura armoniosa que exige que al interpretar una ley los tribunales deben armonizar, hasta donde sea posible, todas sus disposiciones con el propósito de lograr una interpretación integrada, lógica y razonable de la intención legislativa. "Armonizar" significa "[p]oner en armonía, o hacer que no discuerden o se rechacen dos o más partes de un todo, o dos o más cosas que deben concurrir al mismo fin". Así, las secciones, párrafos, frases y oraciones que componen una ley no deben ser interpretadas de forma aislada, sino que deben analizarse en conjunto tomando en consideración todo su contexto de manera integral. Banco Santander v. Correa García, 196 DPR 452, 466 (2016).

Así como el proceso en el juicio seguirá como si se tratare de una sola acusación o denuncia, es coherente que el proceso apelativo se trate de la misma manera. Concluir lo

contrario es imputarle a la Asamblea Legislativa una actuación vacua al momento de aprobar las Reglas de Procedimiento Criminal.

En consecuencia, concluimos que el Tribunal de Apelaciones erró al determinar que la segunda apelación que el señor Rivera Ortiz presentó —caso KLAN201901143—[16] fue tardía en cuanto a los casos DLA2018G00160 y DVI2018G0037. Según el análisis que antecede, su presentación fue oportuna en cuanto a todas las sentencias que emanan del mismo proceso. Determinar lo contrario dejaría al señor Rivera Ortiz sin un remedio real cuando su intención inequívoca y consistente ha sido apelar su convicción.

**IV**

Por los fundamentos que anteceden, se revoca la sentencia que dictó el Tribunal de Apelaciones en el caso KLAN201901143 y se devuelve ante ese foro para que atienda, en su totalidad, el recurso de apelación que el señor Rivera Ortiz presentó el 8 de octubre de 2019, en conformidad con lo aquí resuelto.

Se dictará Sentencia de conformidad.

Maite D. Oronoz Rodríguez
Jueza Presidenta

---

[16] El Tribunal de Apelaciones actuó correctamente la primera vez al desestimar el caso KLAN201901114 por ser prematuro.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

    Recurrido

        v.                    AC-2019-0140

Kelvin Rivera Ortiz

    Peticionario

SENTENCIA

En San Juan, Puerto Rico, a 13 de mayo de 2022.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte de la presente Sentencia, se revoca la sentencia que dictó el Tribunal de Apelaciones en el caso KLAN201901143 y se devuelve ante ese foro para que atienda, en su totalidad, el recurso de apelación que el señor Rivera Ortiz presentó el 8 de octubre de 2019, en conformidad con lo aquí resuelto.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. La Jueza Asociada señora Pabón Charneco concurre con el resultado sin opinión escrita. El Juez Asociado señor Kolthoff Caraballo no intervino.

                        Javier O. Sepúlveda Rodríguez
                      Secretario del Tribunal Supremo